IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

RICHARD DOUGLAS LINCOLN,

      Plaintiff,

v.                                                                                            Civil Action No.: 3:15–CV–30

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

      Defendant.

## REPORT AND RECOMMENDATION

### I. INTRODUCTION

On March 20, 2015, the Plaintiff, Richard Lincoln ("Lincoln" or "Plaintiff"), proceeding *pro se*, filed a complaint in this Court to obtain judicial review of the final decision of Defendant Commissioner of Social Security ("Commissioner" or "Defendant") denying his claims for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act. ECF No. 1.

Plaintiff also filed a motion to proceed *in forma pauperis* that the undersigned granted on March 24, 2015. ECF No. 1. The Commissioner filed her answer on May 28, 2015. ECF No. 10. The Plaintiff then filed his Motion for Summary Judgment on August 21, 2015. ECF No. 17. The Commissioner filed her Motion for Summary Judgment on September 21, 2015. ECF No. 18. For the following reasons, I recommend that Plaintiff's Motion for Summary Judgement be **DENIED** and Commissioner's Motion for Summary Judgement be **GRANTED**.

### II. FACTS

1

**A. Procedural History**

Plaintiff applied for DIB and SSI benefits alleging a disability beginning on October 4, 2011. R. 14. Plaintiff's claims were initially denied on February 9, 2012, and upon reconsideration on May 24, 2012. *Id.* On June 28, 2012, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). *Id.* An ALJ hearing was held on January 6, 2014, by video before ALJ Karen B. Kostol. *Id.*; R. 22. Plaintiff, representing himself, testified at the hearing, as did a Vocational Expert ("VE"). R. 14. On February 25, 2014, the ALJ issued a partially favorable decision, finding Plaintiff disabled as of January 12, 2013. Plaintiff appealed this decision to the Appeals Council, which denied his request for review on January 20, 2015. R. 6–9. Plaintiff then timely brought his claim to this Court.

**B. Medical History**

The following medical history is relevant to Lincoln's challenges to the ALJ's decision.

1. <u>1993 right foot and ankle injury</u>

While working for McQuaide Trucking in 1993, Lincoln suffered a traumatic injury to his right ankle and foot. R. 18, 143–46. Specifically, he had an "open fracture right distal fibula as well as open calcaneal fracture." R. 144. Lincoln "underwent multiple surgeries, but appeared to do well" according to doctors' records from 2006 through 2009. R. 18.

2. <u>2011 injury to right foot and subsequent treatment</u>

Lincoln began seeking medical treatment for his foot and ankle again in October 2011 after he reportedly tripped on a step, re-injuring his right foot. R. 18, 370. Lincoln also alleges that this incident has led to hip, knee, and back pain and numbness. R. 18. A May 2012 x-ray of Lincoln's ankle showed degenerative changes, but an MRI of his left hip was within normal limits. R. 18. Lincoln was seen by Francis Cuda, a nurse practitioner, who noted on July 31, 2012, that Lincoln's

right foot had "little mobility but no pain." R. 293. At the same appointment in July 2012, Mr. Cuda also noted that Lincoln "[m]ay drive a truck as long as [he] does not need to load nor unload it." *Id.* Moreover, Mr. Cuda documented Lincoln's chief complaint then as being "[n]o pain but very little flexibility in right foot. L hip continues to hurt with pain extending to outer midthigh. Walks with cane." *Id.* On September 24, 2012, Mr. Cuda gave Lincoln a note that stated he "is not physically able to work as a prison guard any longer." R. 286.[1] On March 5, 2013, an MRI of Lincoln's lumbar spine was taken. R. 280. The MRI revealed "multilevel degenerative changes of the lumbar spine with disc bulging/neural foraminal narrowing at L4-L5 and a herniated disc at L5 with neural foraminal narrowing compressing on the right L5 nerve root." R. 18; *see* R. 280. On April 25, 2013, Lincoln began seeing Dr. Douglas Midcap, and he told the doctor he was having "issues with back pain, joint pain/stiffness, [and] limited range of motion . . . ." R. 18. However, after reviewing his medical history, Dr. Midcap opined that Lincoln was "disabled and unable to work" as of April 26, 2013. R. 337.

**C. Testimonial Evidence**

Testimony was taken at the ALJ hearing[2] held on January 6, 2014. R. 355–95. The following portions of the testimony are relevant to the disposition of this case.

1. Lincoln's Testimony

Lincoln testified that he and his wife lived together in an apartment. R. 366, 378. Lincoln also stated that he has a driver's license, but that he had not been driving for the past three months.

---

[1] Mr. Cuda went on to say that, "Ankle, hip, and back injuries prevent climbing stairs or prolonged walking on concrete." R. 286.

[2] Lincoln appeared in Wheeling, WV, and the ALJ presided over the hearing via video teleconference pursuant to 20 C.F.R. §§ 404.936(c), 416.1436(c) (2015).

R. 367. In the past, Lincoln worked as a correctional officer, vehicle enforcement officer, truck driver, and Greyhound bus driver. R. 369–75. Most recently, Lincoln resigned from his job as a correctional officer at Huttonsville Correctional Center, and he told the ALJ that he had resigned due to problems with his back and difficulty walking. R. 369–70. Lincoln reported using a cane all day, every day, and he also used motorized scooters while at Wal-Mart. R. 377–78.

Lincoln told the ALJ that he never received any accommodations from any of his employers after his surgery in 1993. R. 376. He also reported that, prior to resigning from Huttonsville Correctional Center, he had never previously quit or been fired from any job because of physical problems. *Id.* Lincoln also testified that he is able to bathe, shower, and shave himself. R. 378. However, according to Lincoln and his wife, he spends his days doing "nothing." *Id.*; R. 380.

2. The Vocational Expert's Testimony

A VE also testified at the hearing. The VE first characterized Lincoln's past work, including his jobs as a correctional officer, vehicle enforcement officer, bus driver, and tractor trailer driver. R. 388–89. The VE went on to briefly explain each occupation as it is described in the DOT. The ALJ then asked the VE to

> assume an individual with the same age, education and past work experience as the claimant with the following abilities. That individual is capable of light exertional level work, can never climb ladders, ropes or scaffolds, can occasionally perform all other postural activities, said individual must avoid concentrated exposure to extreme cold and to hazards such as dangerous moving machinery and unprotected heights. Can an individual with these limitations perform the claimant's past work?

R. 389–90. The VE testified that the individual could perform "the correctional officers occupation as actually performed at Huttonsville only[,]" and the bus driver occupation as actually performed. R. 390. The VE also testified that hypothetical individual could work as a cashier, ticket seller, and

4

waiter. R. 391. However, when the ALJ asked if these jobs could be performed with a cane, the VE testified that that would rule out the waiter position. R. 392. The ALJ continued to modify the hypothetical by imposing further restrictions on what the individual could do, but the VE was still able to come up with at least one job under all of the ALJ's hypothetical scenarios. R. 392–93.

### III. ALJ FINDINGS

In determining whether Lincoln was disabled, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520 and 416.920. The first step in the process is determining whether a claimant is currently engaged in substantial gainful activity. §§ 404.1520(b); 416.920(b). If the claimant is not engaging in substantial gainful activity, then the second step requires the ALJ to determine whether the claimant has a medically determinable impairment that is severe or a combination of impairments that are severe. §§ 404.1520(c); 416.920(c). If the claimant has a severe impairment or combination of impairments, then the analysis moves to the third step in the sequence, which requires the ALJ to determine whether the claimant's impairments or combination of impairments meets or equals any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). §§ 404.1520(d); 416.920(d). If an impairment meets or equals a listed impairment, the claimant is disabled. *Id.* However, if the impairment does not meet or equal a listed impairment, the ALJ must determine the claimant's residual functional capacity ("RFC"), which is the claimant's ability to do physical and mental work activities on a sustained basis despite the limitations of his impairments. §§ 404.1520(e); 416.920(e). After determining the claimant's RFC, the ALJ must determine, at step four, whether the claimant has the RFC to perform the requirements of his past relevant work. §§ 404.1520(f); 416.920(f). If the claimant does not have the RFC to do his past relevant work, then he has established a *prima facie* case of disability, and

5

the burden shifts to the Commissioner to demonstrate, at the final step in the process, that other work exists in significant numbers in the national economy that the claimant can do, given the claimant's RFC, age, education, and work experiences. §§ 404.1520(g); 416.920(g); *see also McLain v. Schweiker*, 715 F.2d 866, 868–69 (4th Cir. 1983).

Here, as a preliminary matter, the ALJ determined that Lincoln met the insured status requirements set forth in the Social Security Act through December 31, 2014. R. 16. At step one of the sequential process, the ALJ found that Lincoln had not engaged in substantial gainful activity since October 4, 2011. *Id.* At step two, the ALJ found that Lincoln had the following severe impairments: "degenerative arthritis of the right ankle/foot status post traumatic injury; acute left hip tronchanteric bursitis; left knee strain; and degenerative disc disease of the lumbar spine with disc bulging, disc herniation, and compression of L5 nerve root." *Id.* At the third step, the ALJ found that none of Lincoln's impairments met or medically equaled the severity of any of the impairments contained in the Listings. R. 17. In order to consider step four of the process, the ALJ determined that, since April 16, 2011, Lincoln had the following RFC:

> [A] capacity to perform a range of sedentary work as defined in 20 CFR 404.1567(a) subject to some additional nonexertional limitations. More specifically, the claimant must be afforded the opportunity for brief, 1 to 2 minute, changes of position at intervals not to exceed 30 minutes without being off task and the job must accommodate the use of a cane or other assistive device for ambulation or balance. He can occasionally climb ramps/stairs, balance, stoop, crouch, kneel, or crawl. However, he cannot climb ladders/ropes/scaffolds and must avoid concentrated exposure to extreme cold and hazards such as moving machinery and unprotected heights. Finally, due to chronic pain issues he is capable of only performing simple, routine, and repetitive tasks.

*Id.* At step four, the ALJ found that Lincoln was unable to perform any past relevant work. R. 20. At the final step, the ALJ found that Lincoln was a "younger person" prior to January 12, 2013. R. 21; *see* 20 C.F.R. § 404.1563(c). The ALJ determined that on Januray 12, 2013, Lincoln's age

category changed to an individual closely approaching advanced age. R. 21; *see* 20 C.F.R. § 404.1563(d). Considering the framework set out in the Medical-Vocational Rules and the regulations generally, the ALJ ultimately concluded that, prior to January 12, 2013, considering Lincoln's "age, education, work experience, and residual functioning capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed." R. 21.

The ALJ concluded that Lincoln was not disabled prior to January 12, 2013, but under sections 216(I), 223(d), and 1614(a)(3)(A), became disabled on that date and remained disabled through the date of the ALJ's decision. R. 22; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g) (2012).

## IV. MOTIONS FOR SUMMARY JUDGMENT

### A. Contentions of the Parties

In Lincoln's *pro se* Motion for Summary Judgment, he appears to argue (1) that Dr. Arturo Sabio's report contained errors, (2) that an MRI from March 2013 showed a herniated disc and moderate spinal stenosis, and (3) that the ALJ incorrectly determined the date he became disabled. *See* ECF No. 17. Lincoln first contends that Dr. Sabio's report to the Social Security Administration contradicted statements he made to Lincoln at the appointment. *Id.* Lincoln cites the doctor's report and alleges inconsistencies between it and what Dr. Sabio told Lincoln at the time. *Id.* Lincoln also notes that he "asked Social Security to investigate Dr. Sabio's statements . . . ." *Id.*

Second, Lincoln advises the Court that his March 2013 MRI showed "a central herniated disc" and "moderate spinal stenosis." Third, Lincoln argues that doctors in 1993 encouraged him to go on disability, that Mr. Cuda told Lincoln in October 2011 that "he could not go back to work and that [he] was done working and had to quit [his] job." *Id.* Accordingly, Lincoln asserts that the ALJ erred in determining the date his disability began, and, in so doing, she incorrectly denied him

7

twenty-nine months of disability payments.

In her Motion for Summary Judgement, the Commissioner argues that substantial evidence supports the ALJ's decision. ECF No. 19. Specifically, the Commissioner asserts that the ALJ accurately formulated Lincoln's RFC; adequately considered all of the evidence; properly determined that Lincoln was not disabled before January 2013; and correctly found that Lincoln could perform other work in the national economy. *Id.*

**B. The Standards**

1. Summary Judgment

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The party seeking summary judgment bears the initial burden of showing the absence of any issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). All inferences must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, "a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

2. Judicial Review

This Court's review of the ALJ's decision is limited to determining whether the decision is supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence" is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Hays v.*

*Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). "Substantial evidence" is not a "large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 664–65 (1988) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971). The decision before the Court is "not whether the Claimant is disabled, but whether the ALJ's finding of no disability is supported by substantial evidence." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (citing *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 2001)). The ALJ's decision must be upheld if it is supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3).

3. <u>Claimant's Credibility</u>

"Because he had the opportunity to observe the demeanor and to determine the credibility of the Claimant, the ALJ's observations concerning these questions are to be given great weight." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (citing *Tyler v. Weinberger*, 409 F. Supp. 776 (E.D. Va. 1976)). "We will reverse an ALJ's credibility determination only if the Claimant can show it was 'patently wrong.'" *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000) (quoting *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990)).

4. <u>Pro Se Plaintiffs</u>

The Court must consider the appropriate framework when the Plaintiff represented himself at the ALJ hearing and has also filed the civil action *pro se*.

> A disability claimant is entitled to a full and fair hearing. Good cause sufficient to remand under 42 U.S.C. § 405(g) may exist if a claimant is not provided a full and fair hearing. However, absence of counsel does "not by itself [indicate] that a hearing was not full and fair"; remand is proper where lack of representation results in "clear prejudice or unfairness" to the claimant. In pro se cases, an ALJ has a duty to "'scrupuously and conscientiously . . . probe into, inquire of, and explore for all the

9

relevant facts.'" An ALJ's failure to fulfill this duty to pro se claimants may result
in remand where the absence of counsel results in prejudice to the claimant.

*Goodwater v. Barnhart*, 579 F. Supp. 2d 746, 754–55 (D.S.C. 2007) aff'd sub nom. Goodwater v. Astrue, 263 F. App'x 338 (4th Cir. 2008) (internal citations omitted).

The Court will "construe *pro se* pleadings and arguments liberally in light of a party's lay status, but must zealously guard [its] raison d'être as neutral and unbiased arbiters." *Elam v. Barnhart*, 386 F. Supp. 2d 746, 753 (E.D. Tex. 2005). Furthermore, this Court is "not bound to 'scour the record for every conceivable error,' but fundamental fairness and interests of justice require that courts not disregard obvious errors, especially when a lay litigant's ignorance may cause legal errors to go unrecognized." *Id.* (internal citations omitted). Thus, the Court reviews the ALJ's decision and considers not only the Plaintiff's articulated contentions, but also what, if anything, the Court finds should be discussed in light of the Plaintiff's lack of representation.

**C. Discussion**

After carefully reviewing the Plaintiff's Motion, it appears that Lincoln raises three issues to the Court. ECF No. 17. He takes issue with some of the notes in Dr. Sabio's report, directs the Court toward an MRI taken in 2013 to demonstrate his disability, and argues generally that the ALJ erred in making her decision. *Id.*

1. Lincoln's misplaced arguments

The first issue, alleged discrepancies in Dr. Sabio's report, is inconsequential to the Court's inquiry because its review is limited to determining whether the ALJ's decision is supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3). The second issue is the March 2013 MRI that showed "a central herniated disc and . . . moderate spinal stenosis." *Id.* at 2. The ALJ found that Lincoln was disabled beginning on January 12, 2013–two months prior to the MRI. *Id.*; R. 22.

Therefore, the Court will consider the MRI and what effect it might have had on the ALJ's decision, but, insofar as Lincoln argues that the results of the MRI establish an independent legal argument, this Court disagrees. Lincoln's only remaining issue in his Motion for Summary Judgment, and, under the standards articulated above, the only argument for this Court to properly consider after reviewing the record, is whether substantial evidence exists to support the ALJ's decision.

2. The ALJ's decision is supported by substantial evidence

The Fourth Circuit has been clear that an ALJ's findings "as to any fact, if supported by substantial evidence, shall be conclusive." Walls v. Barnhart, 296 F. 3d 287, 290 (4th Cir. 2002) (quoting 42 U.S.C. § 405(g)). Moreover, judicial review "of a final decision regarding disability benefits is limited to determining whether the findings are supported by substantial evidence and whether the correct law was applied." *Id.* (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir.1990); Preston v. Heckler, 769 F.2d 988, 990 (4th Cir.1985)). In reviewing the case to determine whether substantial evidence exists, this Court "should not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of" the agency. *Id.* (quoting *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001)).

Although Lincoln contends that he has been disabled since October 2011, the ALJ's determination that he was not disabled, under the Act, until January 2013 is supported by substantial evidence. In her decision, the ALJ noted that "the record simply fails to demonstrate the presence of any significant pathological clinical signs, objective medical findings, laboratory findings, radiological findings, or neurological abnormalities that would have established the existence of a pattern of pain of such severity as to prevent the claimant from engaging in any work on a sustained basis prior to January 12, 2013." R. 20. After reviewing the record, this Court agrees with the ALJ.

Lincoln appears to argue that because doctors told him he could not work, he was disabled before the date the ALJ determined. *See* ECF No. 17. For instance, Lincoln states that "Frank Cuda [wrote] my resignation letter to quit my job due to my back." *Id.* There are at least two problems with this argument.

First, with regard to Mr. Cuda's note, it actually says, Mr. "Lincoln is not physically able to work *as a prison guard* any longer." R. 286 (emphasis added). Mr. Cuda did not say that Lincoln was unable to perform *any* job. In fact, Mr. Cuda noted in a July 2012 visit that Lincoln "[m]ay drive a truck as long as [he] does not need to load or unload it." R. 293. Further, even if Mr. Cuda had opined that Lincoln was unable to work at all, which he apparently did not, that determination would not be conclusive, as explained below.

Second, as the Commissioner notes in her brief, "the regulations are explicit that 'a statement by a medical source that you are disabled or unable to work does not mean that we will determine that you are disabled.'" ECF No. 19 at 9 (internal quotations omitted); *see* 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1). It should also be noted that Mr. Cuda, as a nurse practitioner, is not considered an acceptable medical source under the regulations. 20 C.F.R. §§ 404.1513(a), (d), 416.913(a), (d).

The ALJ also created an RFC that was clearly supported by substantial evidence in the record. The ALJ explained how she determined Lincoln's RFC in great detail. *See* R. 17–20. The ALJ gave the State agency consultants' opinions little weight because she found that more recent evidence suggested Lincoln's abilities were more limited than the opinions indicated. R. 19. The

ALJ also gave little weight to Lincoln's various care providers' opinions[3] that he was disabled or unable to work—noting that such determinations are left to the Commissioner. *Id.* For the ALJ, "[t]he central issue in this case is not whether the claimant had pain and symptoms prior to the established onset date, but whether his pain was so severe as to be disabling." R. 20. The ALJ is absolutely correct. And the central issue for the Court is whether the ALJ's decision is supported by substantial evidence. After reviewing the ALJ's decision against the evidence within the record, this Court finds that the ALJ's decision is supported by substantial evidence.

### V. RECOMMENDATION

In reviewing the record, the Court concludes that the ALJ's decision was based on substantial evidence and **RECOMMENDS THAT**:

1. Plaintiff's Motion for Summary Judgment be **DENIED**. ECF No. 17.

2. Commissioner's Motion for Summary Judgment be **GRANTED**. ECF No. 18.

Any party who appears *pro se* and any counsel of record, as applicable, may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should be submitted to the District Court Judge of Record. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this

---

[3] Nurse Practitioner Cuda and Chiropractor Gerald Booth wrote notes advising that Lincoln should not return to work; however, neither is an "acceptable medical source" under the regulations, and as noted above, it is the Commissioner's role to determine disability. R. 286, 339; 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1). Moreover, although Dr. Midcap is an acceptable medical source under the regulations, Lincoln did not begin seeing Dr. Midcap until April 2013–after the relevant time period. R. 332–38. Thus, the ALJ's decision was based on substantial evidence that included giving these notes limited weight.

Court based upon such Report and Recommendation. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985): *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

DATED: September 24, 2015                         /s/ *James E. Seibert*
                                                  JAMES E. SEIBERT
                                                  UNITED STATES MAGISTRATE JUDGE